While I concur with the majority's decision as it pertains to plaintiff's retaliation claim, I respectfully dissent from its decision to remand for a new trial on plaintiff's claim for sexual harassment. In so doing, however, I am not in disagreement with the majority as to plaintiff being precluded from recovering for sexual harassment insofar as plaintiff's claim is based upon his complaint lodged in August 1996. Although I do not believe the conduct complained of during this time period could support a sexual harassment claim, plaintiff has demonstrated that he unreasonably failed to avail himself of remedial measures that could have addressed any perception of a problem at the time when it arose. Consequently, I agree with the majority that, as a matter of law, the trial court should have withheld all evidence submitted in support of plaintiff's August 1996 claim of harassment.
I, nonetheless, find it implausible that plaintiff's January 1997 and July 1997 complaints could support the denial of Penton's motion for directed verdict. In ordering a retrial of plaintiff's sexual harassment claim but limiting that trial to conduct associated with plaintiff's complaints from January 1997 and July 1997, the trial court is left with complaints that Burke followed plaintiff, stared at him, did not move out his way when he approached and that Burke went to the in-box more often than other employees. During this time period, Burke did not speak to plaintiff, was not involved with his work and otherwise had no direct or indirect contact with plaintiff. This conduct, without more, at best may be considered annoying, but is neither severe nor pervasive so as to affect the conditions of plaintiff's employment.
It is true that actions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex. Hampel v. Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, paragraph four of the syllabus. The plaintiff in Hampel alleged that his employer subjected him to a sexually hostile work environment that was created when plaintiff refused his supervisor's rather overt sexual advances. In upholding this court's decision reversing the denial of the employer's motion for directed verdict, the Hampel court opined:
 Thus, we agree with the court of appeals that the evidence in this case points solely to the conclusion that Hord's outburst against [Hampel] was personal and not gender-based.
The same is true of all of Hord's conduct.
 Hord undoubtedly inflicted serious abuse upon Hampel, not because of his sex, but because he was Hampel. However, R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification.
Id. at 184-185.
In this case, as in Hampel, there may have been personal animosity between Burke and plaintiff. There is no evidence to even remotely suggest, however, that Burke's conduct during this time period was directed at plaintiff solely because of his gender.
I recognize that in some instances the courts are reluctant to uphold a decision reversing a trial court's denial of a motion for directed verdict on a claim for sexual harassment if there is some shred of evidence under which reasonable minds could find for either party. See Gliner v. Saint-Gobain Norton Indus. Ceramics Corp. (2000),89 Ohio St.3d 414, 415. Under the facts and circumstancesof this case, however, I am hard pressed to find any evidence that could support such a claim.
Consequently, I would find that plaintiff's claim for sexual harassment must fail in its entirety as a matter of law. Accordingly, I would reverse the decision of the trial court that denied Penton's motion for directed verdict and enter judgment in Penton's favor.